UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| LINDSEY D. FOSTER, | ) | |
|---|---|---|
| Plaintiff | ) | |
| v. | ) | No. 2:17-cv-00253-NT |
| SOCIAL SECURITY ADMINISTRATION COMMISSIONER, | ) | |
| Defendant | ) | |

# REPORT AND RECOMMENDED DECISION

On Plaintiff Lindsey D. Foster's application for disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act, Defendant, the Social Security Administration Acting Commissioner, found that Plaintiff has a severe impairment, but retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's request for disability benefits. Plaintiff filed this action to obtain judicial review of Defendant's final administrative decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, and after consideration of the parties' arguments, I recommend the Court affirm the administrative decision.

## The Administrative Findings

The Commissioner's final decision is the April 6, 2016, decision of the Administrative Law Judge (ALJ). (ECF No. 11-2.)[1] The ALJ's decision tracks the familiar

---

[1] Because the Appeals Council found no reason to review that decision (R. 1), the Acting Commissioner's final decision is the ALJ's decision.

five-step sequential evaluation process for analyzing social security disability claims, 20 C.F.R. §§ 404.1520, 416.920.

The ALJ found that Plaintiff has a severe, but non-listing-level impairment consisting of organic mental disorder/cognitive processing delay (learning disability). (ALJ Decision ¶¶ 3 – 4.) The ALJ assessed Plaintiff to have the residual functional capacity (RFC) for a full range of work at all exertional levels, subject to nonexertional limitations that restrict Plaintiff to simple, routine, repetitive tasks involving no more than incidental (up to 1/6 of the workday) change in work processes, no more than occasional interaction with supervisors and coworkers, and no interaction with the general public. (*Id.* ¶ 5.) Based in part on the testimony of a vocational expert, the ALJ concluded that Plaintiff retains the functional capacity to perform jobs existing in substantial numbers in the national economy, including the representative occupations of floor cleaner, hand packer, and sandwich maker. (*Id.* ¶ 10, R. 32.)

**Standard of Review**

The Court must affirm the administrative decision provided the decision is based on the correct legal standards and is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS,* 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive

when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## Discussion

Plaintiff argues the ALJ erred when he (a) failed to find a severe anxiety/affective disorder or borderline intellectual functioning, (b) misapplied Listing 12.05(C), and (c) made an RFC finding that is not supported by any medical opinion of record. (Statement of Errors at 1, ECF No. 15.)

**A.     Step 2 Omission of Affect/Anxiety Disorder or Borderline Intellect**

Plaintiff argues the ALJ erred when he failed to find Plaintiff's depression and anxiety, or borderline intellectual functioning, to be severe impairments. At step 2 of the sequential evaluation process, a social security disability claimant must establish the alleged conditions are severe, but the burden is *de minimis*, and is designed merely to screen out groundless claims. *McDonald v. Sec'y of HHS*, 795 F.2d 1118, 1123 – 24 (1st Cir. 1986). The ALJ may find that an impairment or combination of impairments is not severe when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* at 1124 (quoting Social Security Ruling 85–28). In other words, an impairment is severe if it has more than a minimal impact on the claimant's ability to perform basic work activities on a regular and continuing basis. *Id.*

The ALJ concluded that while the record reflects that Plaintiff has experienced anxiety and depression, the record does not support a finding that Plaintiff's suffers from a

3

severe mental health impairment. (R. 24 – 25.) In support of the finding, the ALJ cited the assessments of consulting experts who reviewed Plaintiff's medical records on behalf of the Maine Disability Determination Services. The assessments include an October 16, 2014, report of Brian Stahl, Ph.D., who, upon review of Plaintiff's request for reconsideration of the administrative denial of Plaintiff's claim, concluded the "affective disorders" of record were non-severe. (Exs. 5A, 6A, ECF No. 11-3, R. 124, 136 – 137.) In addition, in a June 12, 2014, Report of Psychological Evaluation (Ex. 6F, ECF No. 11-8), Leah Baer, Psy.D, determined that under DSM-V, Plaintiff's affective disorder was properly labeled "persistent depressive disorder with mild anxious distress, early onset, with pure dysthemic syndrome." (*Id.* at 9.)

The expert assessments constitute substantial evidence in support of the ALJ's finding that Plaintiff's symptoms associated with affect and anxiety related diagnoses are mild when the standards governing disability claims are considered. The treatment records cited by Plaintiff, i.e., Bergeron (1F at 481, 499), Girard (5F at 20), and Hagan (8F), do not compel a contrary conclusion.

Finally, to the extent Plaintiff contends the ALJ erred by failing to identify "borderline intellectual functioning" as an additional impairment at step 2, Plaintiff has failed to cite evidence to require a finding of error. The ALJ found that Plaintiff's intellectual impairment consists in an "organic mental disorder/cognitive processing delay," and the ALJ's step 2 discussion focuses on records pertaining to Plaintiff's intellectual functioning and IQ test scores. Plaintiff has not persuasively demonstrated that what she considers to be a "borderline intellect" impairment is materially different from

the organic mental disorder/cognitive processing delay the ALJ acknowledged was severe.

B.     **Step 3 Failure to Address Listing 12.05(C)**

Plaintiff argues that based on a 2014 IQ test result, the ALJ was required to call a medical expert at the hearing to assess whether her combination of impairments met or equaled Listing 12.05(C). Plaintiff also contends the ALJ erred by failing to find that her impairments meet listing 12.05(C). (Statement of Errors at 3 – 6.)

At step 3 of the sequential evaluation process, the Commissioner considers whether a claimant's impairments meet or equal the criteria set forth in the "listings" found in appendix 1 of the disability regulations. 20 C.F.R. § 404.1520(a)(iii), 416.920(a)(iii). If so, the claimant is deemed disabled without any further analysis of the claimant's residual functional capacity to perform past relevant work or other work in the national economy. *Id.* §§ 404.1520(d), 416.920(d); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A) ("The listings are so constructed that an individual with an impairment(s) that meets or is equivalent in severity to the criteria of a listing could not reasonably be expected to do any gainful activity."); 20 C.F.R. §§ 404.1525(a), 416.925(a) (same). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). However, if a claimant has an impairment identified in a listing, but does not meet one or more of the criteria of the listing, the claimant may still be found disabled at step 3 if the claimant has "other findings related to [his] impairment that are at least of equal medical significance to the required criteria." 20 C.F.R. §§ 404.1526(b)(1)(ii), 416.926(b)(1)(ii) (defining "medical equivalence").

Prior to amendments effective January 17, 2017, and for purposes of Plaintiff's

5

claim, the relevant listing language provided:

> The structure of the listing for intellectual disability (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for intellectual disability. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing. Paragraphs A and B contain criteria that describe disorders we consider severe enough to prevent your doing any gainful activity without any additional assessment of functional limitations. For paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, i.e., is a "severe" impairment(s), as defined in §§ 404.1520(c) and 416.920(c). If the additional impairment(s) does not cause limitations that are "severe" as defined in §§ 404.1520(c) and 416.920(c), we will not find that the additional impairment(s) imposes "an additional and significant work-related limitation of function," even if you are unable to do your past work because of the unique features of that work. …
>
> …. When you have a medically determinable severe mental impairment that does not satisfy the diagnostic description or the requirements of the paragraph A criteria of the relevant listing, the assessment of the paragraph B and C criteria is critical to a determination of equivalence.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A).

> The listing on which Plaintiff relies, Listing 12.05(C), reads as follows:
>
> 12.05 Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
>     …
>
>     C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function ….

*Id.* § 12.05(C).

As Plaintiff argues, the ALJ did not, technically, "apply" Listing 12.05(C). Instead, the ALJ adopted the approach of the consulting medical experts and assessed Plaintiff's impairment under Listing 12.02 (organic mental disorders). The ALJ, however, did not totally disregard Listing 12.05. The ALJ acknowledged that the most recent WAIS-IV test of record, conducted in June 2014, reported Plaintiff's full scale IQ at 68. (R. 24, citing Baer, Ex. 6F at 8.) The ALJ also noted that as recently as January 2013, Plaintiff obtained a full scale IQ score of 72 on the WAIS, and that similarly tests in 2003 and 2007 resulted in a full scale score of 71. (*Id.*, citing Ex. 6F at 3.) The ALJ reasoned that the consistent achievement of scores above 70 constituted the more reliable indicator of Plaintiff's IQ than the score she obtained with Dr. Baer, given the absence of any evidence of record that would explain a "sudden or significant" decrease in the score. (*Id.*: "while it is possible to manifest lower test scores than those of which one is capable, the reverse does not hold true.").

The ALJ must resolve conflicts in the evidence, including conflicts as to a plaintiff's intellectual functioning. *Page v. Berryhill*, No. 1:16-cv-00626-JDL, 2017 WL 5153401, at *4 (D. Me. Nov. 7, 2017); *Libby v. Astrue*, No. 2:10-cv-00292-JAW, 2011 WL 2940738, at *4 (D. Me. July 19, 2011). Here, the ALJ's reasoning is supportable on the record, particularly given that the two most recent IQ test reports are separated by only 15 months, the 2013 test was conducted less than a year prior to Plaintiff's filing of her Title II claim, and the materials available for Dr. Stahl's reconsideration review included the

7

Psychodiagnostic Services of So. Me. records that contained the score of 68.[2] (Ex. 5A at 120.) Evidently, Dr. Stahl was aware of the results of IQ testing administered by Dr. Baer and concluded that Listing 12.05 was not applicable. In any event, the ALJ specifically noted that, even if Listing 12.05 were applied, the C criteria would not be met given that the record did not demonstrate another impairment that caused more than a minimal limitation of ability to do basic work activities. (R. 24, 26.) As discussed previously, Plaintiff has not demonstrated error in the ALJ's step 2 determination that Plaintiff's affective/anxiety impairment is not severe, and Plaintiff has not cited any other impairment that would satisfy the final criteria of Listing 12.05(C) (i.e., "a physical or other mental impairment imposing an additional and significant work-related limitation of function.") Accordingly, even if the Court were to find that the ALJ erred in his listing analysis, the error would be harmless.

## C.     RFC Not Supported by Substantial Evidence

Plaintiff argues the ALJ erred when he failed to discuss Plaintiff's ability to engage in the nonexertional activities of making decisions and maintaining attention and concentration. (Statement of Errors at 12 – 14.) As the ALJ noted, the findings of the agency consultants, including Dr. Stahl, are "appropriate" on this record (R. 30), and support Dr. Stahl's conclusion that Plaintiff has "no more than mild to moderate limitations

---

[2] At oral argument, Plaintiff observed that the Commissioner's Program Operations Manual System (POMS) states that, for a child, an IQ score comparable to Plaintiff's is only considered valid for two years. *See* POMS § DI 24515.055(A), (D). Plaintiff was 18 at the time of the 2013 testing, and 19 at the time of the 2014 testing. Given this particular age difference, Plaintiff's argument is not convincing. Finally, the ALJ articulated additional reasons why he considered the 2014 test to be less reliable than the 2013 results. (R. 29.)

from psychological issues." (*Id.*) On this record, the ALJ was not required to discuss this issue further to support his finding that Plaintiff is restricted to simple, routine, repetitive tasks involving no more than incidental change in work processes. (R. 27; Ex. 6A, R. 138 – 139.) Furthermore, Plaintiff has not pointed to any record evidence that reflects that a treatment provider has opined that Plaintiff cannot persist in work activity with restrictions included in the ALJ's RFC assessment.[3]

**Conclusion**

Based on the foregoing analysis, I recommend the Court affirm the administrative decision.

**NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 23rd day of April, 2018.

---

[3] Jane Ho, M.D., stated in a one-sentence letter "to whom it may concern," that Plaintiff's learning disability and processing disorder limited her to a 20-hour work week. The ALJ rejected that opinion, noting "there is no quantifying evidence whatsoever to explain the doctor's proposal," Dr. Ho only saw Plaintiff twice to treat a sore throat, and Plaintiff's primary provider did not offer an opinion concerning Plaintiff's ability to work. (R. 30.) The ALJ's conclusions are reasonable and supported by the record.